UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KEVIN L. MARTIN,

    Plaintiff,

v.       CAUSE NO. 3:19-CV-1102-DRL-MGG

TAMMY JONES *et al.*,

    Defendants.

## OPINION AND ORDER

Kevin L. Martin, a prisoner without a lawyer, is proceeding in this case "on a claim for money damages against Supervisor Jones, Chaplain Schultz, and Sergeant Reed for violating his rights under the Free Exercise Clause of the First Amendment by refusing to provide him a kosher diet from July 19, 2019, to August 7, 2019[.]" ECF 10 at 2. Supervisor Tammy Jones filed a motion for summary judgment, arguing she was not personally involved in violating Mr. Martin's constitutional rights. ECF 114. Mr. Martin filed a response, and Supervisor Jones filed a reply. ECF 124, 127. Chaplain Michael Schultz and Sgt. Kenneth Reed also filed a joint motion for summary judgment, arguing they were not personally involved in violating Mr. Martin's constitutional rights. ECF 121. Mr. Martin filed a response, and Chaplain Schultz and Sgt. Reed filed a reply. ECF 126, 129. The summary judgment motions are now fully briefed and ripe for ruling.

STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

"The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

42 U.S.C. § 1983 requires a plaintiff to show more than just a violation of a constitutional right. To recover damages from a defendant, he must also prove that defendant was personally involved in the violation. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based upon personal liability and predicated upon fault."). "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Id.* A defendant cannot be liable without "a showing of direct responsibility for the improper action[.]" *Id.* Put otherwise, individuals will only be liable for their own misconduct, unless they are responsible for creating the peril that leads to the constitutional violation. *See Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

FACTS

Mr. Martin is a Hebrew believer. ECF 121-3 at 31-32. As part of his Hebrew beliefs, he follows a kosher diet. *Id.* at 30-31. He was approved by the Indiana Department of Correction (IDOC) for a kosher diet in November 2017, when he was housed at Wabash Valley Correctional Facility. *Id.* at 63; ECF 90-2 at 15, 27. On July 19, 2019, Mr. Martin was transferred from Wabash to Westville Correctional Facility. ECF 121-3 at 58, 61-62. For an unknown reason, Mr. Martin was not placed on Westville's kosher meal list at the time of his transfer.[1] Shortly after arriving at Westville, Mr. Martin requested a kosher meal

---

[1] Sgt. Reed and Chaplain Schultz both attest that the reason Mr. Martin was not initially placed on Westville's kosher meal list was likely due to an "administrative error" during his transfer. ECF 121-1 at 1; ECF 121-2 at 2. Mr. Martin responds that the failure to place him on Westville's kosher meal list could not have been an administrative error because each chaplain's office has access to the IDOC kosher list. ECF 126 at 13. Regardless, Mr. Martin does not provide any evidence regarding who was responsible for failing to place him on Westville's kosher meal list

3

from Sgt. Reed. *Id.* at 22-24. Sgt. Reed informed Mr. Martin he could not provide him a kosher meal because he was not on Westville's kosher meal list, but that he would go to the chaplain's office to investigate the issue. *Id.*

Within three or four days of his arrival at Westville, Mr. Martin discussed his kosher diet with Chaplain Schultz, who informed Mr. Martin that he would look into it and email Aramark, the food service provider at Westville, to notify them of his arrival at Westville. *Id.* at 24, 26-27, 33-34. Mr. Martin spoke with Chaplain Schultz again on some later date, and Chaplain Schultz informed him he had emailed Aramark about the issue and it should be resolved. *Id.* at 34-35. On July 31, 2019, the chaplain's office notified Mr. Martin in writing that Aramark had been notified of his arrival at Westville. ECF 90-1 at 7. Mr. Martin began receiving kosher meals at Westville around August 7, 2019. ECF 1 at 1; ECF 90-1 at 5. Because neither party disputes these facts, the court accepts them as undisputed.

## ANALYSIS

A.  *Supervisor Jones.*

Supervisor Jones provides an affidavit in which she attests to the following facts. During all relevant times, Supervisor Jones was employed by Aramark as an assistant food service director at Westville. ECF 117-1 at 2. In this position, Supervisor Jones oversaw Westville's daily food service in the kitchen known as the General Services Complex. *Id.* Supervisor Jones did not work in the production kitchen, which prepared

---

and testified at his deposition that it was due to a "lack of communication" within IDOC. ECF 121-3 at 22.

and served kosher meals at Westville. *Id.* A different food service director was assigned to the production kitchen. *Id.* Supervisor Jones does not recall having any personal involvement regarding Mr. Martin's allegation he was refused a kosher diet. *Id.* at 3.

Specifically, Supervisor Jones has no recollection or written record of ever receiving any grievance or communication from Mr. Martin, Mr. Martin's caseworker, or any IDOC employee regarding Mr. Martin's request for a kosher diet. *Id.* at 4. Supervisor Jones first became aware of Mr. Martin's allegation he was refused a kosher diet after he filed this lawsuit. *Id.* If an IDOC staff member had come to Supervisor Jones with Mr. Martin's request for a kosher diet, she would have assisted in investigating his claim to determine if he was on IDOC's kosher list and adding him to the list of kosher meal recipients at Westville. *Id.* at 3-4.

Here, Mr. Martin has not provided any evidence that Supervisor Jones was personally involved in violating his First Amendment rights. Specifically, Supervisor Jones attests she never received any communication regarding Mr. Martin's request for a kosher diet and was not aware of his allegation he was denied a kosher diet until after he filed this lawsuit. Mr. Martin responds that Supervisor Jones was personally involved because he instructed his caseworker to forward his kosher diet requests to Supervisor Jones and Supervisor Jones never responded to these requests. ECF 124 at 4-6. But Mr. Martin does not support this argument with any admissible evidence. Specifically, Mr. Martin argues he "could bring in" his caseworker to testify that she forwarded his kosher diet requests to Supervisor Jones, but he does not offer any affidavit or testimony from his caseworker. *Id.* at 5.

5

Instead, Mr. Martin provides two documents related to his caseworker. First, he provides a copy of a "Request for Interview" form dated February 7, 2020, in which he asked his caseworker for an explanation as to why she did not forward his July 2019 kosher diet requests to Supervisor Jones and his caseworker responded that she made a mistake that has now been corrected. ECF 124-1 at 1. But this evidence indicates Supervisor Jones was not sent Mr. Martin's kosher diet requests until February 2020, which supports her attestation she was not aware of Mr. Martin's allegations until after he filed this lawsuit. Second, Mr. Martin provides Supervisor Jones' response to his request for admission, in which Supervisor Jones asserted she never received any emails or kosher diet requests from Mr. Martin's caseworker before September 2019. ECF 124-1 at 2-3. But again, this evidence supports that Supervisor Jones was not personally involved in refusing Mr. Martin a kosher diet.

Thus, Mr. Martin provides no evidence disputing Supervisor Jones' attestation she was not aware of his allegation he was denied a kosher diet until after he filed this lawsuit. Because there is insufficient evidence in the record by which a reasonable jury could conclude Supervisor Jones was personally responsible for violating Mr. Martin's First Amendment rights, summary judgment is warranted in her favor.

B.   *Sgt. Reed.*

Sgt. Reed provides an affidavit in which he attests to the following facts. During all relevant times, Sgt. Reed was a correctional sergeant at Westville. ECF 121-1 at 1. Shortly after Mr. Martin arrived at Westville, he requested a kosher meal from Sgt. Reed. *Id.* Sgt. Reed declined Mr. Martin's request for a kosher meal because he was not on

6

Westville's kosher meal list. *Id.* at 2. Had Mr. Martin been on Westville's kosher meal list, Sgt. Reed would have provided him a kosher meal. *Id.* Sgt. Reed had no authority to provide a kosher meal to an inmate who was not listed on Westville's kosher meal list. *Id.* Nevertheless, Sgt. Reed investigated the issue by following up with the chaplain. *Id.*

Here, the undisputed evidence shows Sgt. Reed was not personally responsible for violating Mr. Martin's First Amendment rights. Specifically, Mr. Martin does not dispute that Sgt. Reed had no authority to provide him a kosher meal, so the court accepts that as undisputed. Instead, Mr. Martin argues Sgt. Reed is lying about following up with the chaplain to investigate his kosher meal request, as any investigation would have shown he belonged on the kosher list. ECF 126 at 12. But there is no evidence Sgt. Reed is lying about following up with the chaplain, as it is undisputed that the chaplain's office investigated and helped resolve Mr. Martin's kosher meal request. Moreover, Mr. Martin has no personal knowledge regarding whether or not Sgt. Reed followed up with the chaplain, and his mere assertion that Sgt. Reed is lying does not raise a genuine dispute. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[W]hen challenges to witness' credibility are *all* that a plaintiff relies on, and he has shown no independent facts—no proof—to support his claims, summary judgment in favor of the defendant is proper") (emphasis in original); *see also Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998) ("[T]he prospect of challenging a witness' credibility is not alone enough to avoid summary judgment.").

Accordingly, because the undisputed evidence shows Sgt. Reed had no authority to provide Mr. Martin with a kosher meal and he responded reasonably to Mr. Martin's

kosher meal request by bringing the issue to the chaplain's office, no reasonable jury could conclude Sgt. Reed was directly responsible for violating Mr. Martin's First Amendment rights. Summary judgment is warranted in favor of Sgt. Reed.

    C.    *Chaplain Schultz.*

Chaplain Schultz provides an affidavit in which he attests to the following facts. Shortly after Mr. Martin's transfer to Westville, Chaplain Schultz or someone in the chaplain's office learned Mr. Martin had requested to receive kosher meals. ECF 121-2 at 1. The chaplain's office investigated the matter and learned Mr. Martin had been approved to receive kosher meals by IDOC's central office prior to his arrival at Westville. *Id.* at 1-2. Someone in the chaplain's office reached out to Aramark to ensure Mr. Martin would begin receiving kosher meals. *Id.* at 2. Chaplain Schultz did not have the authority to unilaterally add Mr. Martin to Westville's kosher meal list and had to coordinate with Aramark officials to ensure Mr. Martin was provided kosher meals. *Id.* Chaplain Schultz never personally denied Mr. Martin a kosher meal. *Id.* Instead, he or someone in the chaplain's office investigated Mr. Martin's complaint to ensure he received a kosher meal. *Id.* Because Mr. Martin does not dispute these facts, the court accepts them as undisputed.

Here, the undisputed evidence shows Chaplain Schultz was not personally responsible for violating Mr. Martin's First Amendment rights. Specifically, the undisputed evidence shows: (1) the chaplain's office received Mr. Martin's kosher meal request around July 22, 2019 (ECF 121-3 at 24-27, 33-34); (2) the chaplain's office investigated the matter and determined Mr. Martin had been approved to receive kosher meals prior to his arrival at Westville (ECF 121-2 at 1-2); (3) the chaplain's office reached

8

out to Aramark on or before July 31, 2019, to notify them of Mr. Martin's arrival at Westville and to ensure he would begin receiving kosher meals (ECF 90-1 at 7); and (4) Mr. Martin began receiving kosher meals at Westville around August 7, 2019 (ECF 1 at 1; ECF 90-1 at 5). Thus, the undisputed evidence shows the chaplain's office took reasonable steps to investigate and resolve Mr. Martin's kosher meal request, and there is no evidence by which a reasonable jury could conclude Chaplain Schultz was directly responsible for violating Mr. Martin's First Amendment rights. Summary judgment is warranted in favor of Chaplain Schultz.

For these reasons, the court:

(1) GRANTS the defendants' motions for summary judgment (ECF 114, 121); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Kevin L. Martin and to close this case.

SO ORDERED.

July 29, 2022                                         *s/ Damon R. Leichty*
                                                      Judge, United States District Court